OPINION
{¶ 1} Chanz Berry, defendant-appellant, brings this appeal from his conviction and sentence imposed on December 9, 2005 and journalized on December 19, 2005. Appellant was charged in a five-count indictment with the following offenses: count one, having a weapon while under disability, R.C. 2923.13, a third degree felony; count two, aggravated robbery with a firearm specification, R.C. 2911.01, a first degree felony; count three, attempted aggravated murder with a firearm specification, R.C.2903.01 and 2923.02 and counts four and five, aggravated murder with firearm specifications, R.C. 2903.01, unclassified felonies.[1] The crimes were alleged to have occurred on April 24, 2004.
 {¶ 2} Appellant waived trial by jury on count one, having a weapon while under disability. The remaining counts were tried to a jury. The jury found appellant guilty of attempted murder with a firearm specification, a first degree felony and a lesser included offense of count three, and guilty of murder with a firearm specification, an unclassified felony and a lesser included offense of count four. The trial court found appellant guilty of count one, having a weapon while under disability and granted appellant's motion for judgment of acquittal as to counts two and five.
 {¶ 3} The trial court sentenced appellant to four years on count one, having a weapon while under disability; six years on count three, attempted murder; fifteen years to life on count four, murder, together with an additional three years for using a firearm in the commission of the crime. A single firearm specification was imposed as required by R.C. 2929.14(D)(1)(b). Counts three and four were ordered to be served consecutively to each other. By law, the specification to count four was ordered to be served consecutively to that offense. The sentence on count one was to be served concurrently with the other counts.
 {¶ 4} At trial, the following testimony and evidence was presented. On April 24, 2004, Dante Green was at his home located at 1411 North Sixth Street in Columbus, Ohio. Green lived there with his mother and sister. That evening, Green was babysitting his four cousins, all under the age of nine. Some of Green's friends visited, engaged in a game of dice for money and Green won approximately $160. The friends left.
 {¶ 5} Green knew appellant from the neighborhood. Later that evening, appellant came to Green's home. After Green put his young cousins to bed, he and appellant smoked some marijuana. A second person, Frank Franklin, also came to visit. The three watched television. Appellant showed Green and Franklin a pistol, described as a small, black, snub-nosed revolver. Appellant then asked Green what he would do if appellant shot him.
 {¶ 6} Later in the evening, appellant asked Green for $5 that Green owed him. Green said he did not have change and appellant would have to wait. Appellant left and Green and Franklin went to a second floor bedroom to smoke marijuana. Appellant returned and asked to use the telephone, then joined the other two and smoked marijuana. Green noticed that appellant picked up an ashtray, looked at it, then took a towel and wiped the ashtray before putting it down.
 {¶ 7} Appellant asked Green if he could spend the night. Appellant and Franklin slept on the floor while Green slept in a bed with a four-month old cousin. A lamp in the room was left on during the night. In the middle of the night, Green woke to find appellant standing over him. Appellant raised his hands and Green heard a loud noise and immediately felt a blow to his face. He had been shot in the mouth. He was also shot in the arm. Green ran from the room. He was able to get out of the house and ran to a friend's house for help. The friend called police. When Green ran from the room after being shot by appellant, Franklin was still lying on the floor.
 {¶ 8} Police responded to the 911 call at approximately five o'clock in the morning. The officers found that the second floor bedroom window in Green's home had been broken out from the inside and a porch railing directly below that window was damaged. Additionally, the kitchen window below the upstairs bedroom window was also broken. Both the front and rear doors were locked, so officers crawled through the broken kitchen window.[2] They heard a baby crying and found the three young children and an infant upstairs.
 {¶ 9} Frank Franklin's body was discovered about 40 or 50 yards from Green's house. Franklin died from a single gunshot wound to the neck. The bullet passed through an artery and entered his lung. The blood loss was significant: about 1600 cc's, and in the opinion of the coroner, death would have occurred within ten to 20 minutes. However, during that time, Franklin would have been capable of volitional movement.
 {¶ 10} The crime scene search unit processed the scene on the day of the shootings. On July 28, 2004, they returned and conducted an additional search of the area around Green's home. A variety of shell casings were collected on July 28 that had not been present when the area was searched on April 24.
 {¶ 11} Testing of the marijuana stubs and cigarette butts was linked through DNA to victims Green and Franklin. Many of the latent fingerprint lifts lacked sufficient identifying characteristics to compare to known prints. Other prints were of Green and Franklin. None were of appellant.
 {¶ 12} The bullet from Franklin's body was of .38 caliber. Virtually all .38 caliber bullets, some 99.9 percent, are fired from revolvers rather than semi-automatics. A shell casing recovered from the victim's home was identified as a Federal 9mm casing. The bullet from Franklin's body was not fired from the same weapon that fired the 9mm casing found in the victim's home. That casing and all of the casings found on July 28 in the area around Green's home were fired from the same weapon. Green explained that the 9mm shell casing detectives found on his bedroom windowsill was one of several he had picked up in his yard days before the shooting. Green said he had been throwing the casings through his window and one landed on the sill. The responding officer testified that Green's home was in a high crime area where it was commonplace to have gunshots and find spent shell casings on the ground.
 {¶ 13} Despite being shot in the face, Green survived. Metal plates were surgically inserted into his jaw. His jaw was wired shut for nine weeks. In addition, the second bullet damaged bone in his arm. While he was recovering in the hospital, Green identified appellant as his assailant from an array of photographs shown to him by detectives.
 {¶ 14} Appellant raises a single assignment of error:
THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 15} The legal concepts of weight and sufficiency of the evidence are both qualitatively and quantitatively different.State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. Evidence is sufficient to support a conviction where the evidence, if believed, would allow a rational trier of fact to conclude that the state had proved each element of the offense beyond a reasonable doubt.
 {¶ 16} In the instant case, if believed, the testimony of the victim, Dante Green, taken together with the facts and circumstances in evidence, was sufficient to prove each element of the several offenses beyond a reasonable doubt. Green knew appellant. Green testified that appellant produced a revolver during the evening. Later, Green saw appellant standing over him in the middle of the night. Green saw appellant raise his hands, heard a loud sound and immediately felt a blow to his face. Green identified appellant as the man who shot him. A jury may infer purpose to kill from the use of a deadly weapon, the manner in which the weapon was used and all of the facts and circumstances in evidence. Thus, there was sufficient evidence that appellant had the purpose to kill Green.
 {¶ 17} As he fled, Green saw victim Franklin lying on the floor. Franklin's body was later found in a nearby yard. He had been shot in the back of the neck. Expert testimony established that Franklin could have acted with volition for up to 20 minutes after being shot. It is not unreasonable to conclude that, after appellant shot Green in the face and Green fled, appellant turned his attention to Franklin who attempted to flee by jumping through the second story bedroom window. It is reasonable to infer that Franklin landed on the railing below and was shot in the back of the neck by appellant. As with Green, the manner in which appellant used a deadly weapon, together with all of the facts and circumstances in evidence, supports the element of purpose to kill.
 {¶ 18} Other expert testimony established that the bullet that killed Franklin was.38 caliber and that 99.9 percent of the time, revolvers, not semi-automatic pistols, chamber .38 caliber rounds. Appellant had a revolver that night. Sufficient evidence was presented to support the convictions for each offense, attempted murder, murder and having a weapon while under disability, as well as the firearm specifications.
 {¶ 19} A conviction that is supported by sufficient evidence may nevertheless be reversed if a court of appeals unanimously finds that the verdict is against the manifest weight of the evidence. In a review of the weight of the evidence, the appellate court reviews the entire record, weighs the evidence and all reasonable inferences to be drawn therefrom, considers the credibility of the witnesses and then determines whether, in resolving conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."Thompkins, supra, at 387, quoting with approval, State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 20} We have reviewed the entire record under the standard set forth above and, having done so, reject appellant's weight of the evidence argument. First, Green's testimony neither lacks credibility, nor conflicts with the physical evidence from the scene. There is no indication that Green's identification of appellant was appreciably diminished by his admission that he had shared marijuana with appellant and Franklin some time earlier that evening. This was not an encounter with a stranger. Green knew appellant. A light was on in the bedroom that allowed Green to see and identify appellant. Earlier, in an unusual act, appellant had picked up an ashtray, then carefully wiped it off with a towel before replacing it on the table. It is reasonable to infer that appellant was planning his attack and wiped the ashtray to remove his fingerprints. Appellant had been sleeping in the room with Green and Franklin. Green was shot. Franklin was shot. Appellant was neither shot nor was there evidence that a third person broke into the house and attacked the three men.
 {¶ 21} The fact that the .38 caliber bullet that killed Franklin was not fired from a 9mm weapon does not detract from the state's case. The several 9mm casings found in Green's yard matched the casing found on the windowsill in Green's house. Green explained that several days earlier, he had found some 9mm shell casings in his yard, picked them up and later was throwing them from his window when one fell on the sill. Expert testimony established that a revolver, rather than a semi-automatic pistol almost certainly was the weapon that fired the bullet removed from Franklin's body. Appellant displayed a revolver to Green and Franklin and asked Green what he would do if appellant shot him.
 {¶ 22} Having reviewed the complete record, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that reversal is warranted. The verdict is not against the manifest weight of the evidence.
 {¶ 23} Because the verdict is supported by sufficient evidence and is not against the manifest weight of the evidence, appellant's assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Whiteside, JJ., concur.
Whiteside, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
[1] The disability alleged in count one was based on appellant's previous adjudication of delinquency by virtue of having committed robbery, R.C. 2911.02.
[2] Both doors had deadbolt locks that required a key to open. Green did not have his key with him when he was shot and fled the upstairs bedroom and had crawled out a basement window to escape from appellant.